# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00150-CV

**Julie Ryan, Individually and as Personal Representative of the Heirs and Estate of Glenn Ryan, Deceased, James Ryan, and Brandie Fellows, Appellants**

**v.**

**KCG, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. GN400328, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Julie Ryan, individually and as personal representative for the heirs and estate of Glenn Ryan, James Ryan, and Brandie Fellows (collectively, "Ryan") appeal from the trial court's order granting summary judgment in favor of appellee KCG, Inc. Ryan argues that the trial court erred in striking Glenn Ryan's deposition as summary judgment evidence. We affirm the trial court's order.

### Factual and Procedural Summary

Glenn Ryan, Julie Ryan's late husband, was a drywall finisher for about thirty years, starting in the late 1960s. In November 1999, Mr. Ryan was diagnosed with lung cancer, and in September 2000, he and his wife, as well as several other plaintiffs, sued a number of companies associated with asbestos-containing drywall products. The plaintiffs alleged that the defendants or

their predecessors-in-interest: (1) manufactured, sold, and distributed asbestos-containing products; (2) failed to timely and adequately warn of the risks associated with asbestos, provide information about safety equipment to reduce those risks, properly test asbestos products before releasing them for use, or develop substitute materials that did not contain asbestos; (3) were subject to strict liability for the harm caused by the asbestos-containing products; (4) conspired to conceal the risks associated with asbestos and deprive the plaintiffs of an informed choice as to whether to use asbestos-containing products; and (5) were negligent and committed gross negligence and intentional wrongful conduct in their behavior related to their various asbestos products.[1]  Appellee KCG was not one of the original defendants and was not made party to the suit until April 2000, when the plaintiffs filed their fourth amended petition naming KCG as successor in interest for Ruco, Inc.

Because of Mr. Ryan's failing health, his deposition was taken early in the proceedings, on October 3, 2000, despite objections by one of the defendants.  Mr. Ryan died less than three weeks later.  On December 2, 2003, KCG filed a no-evidence motion for summary judgment, arguing that Ryan could not produce evidence that Mr. Ryan was exposed to any asbestos-containing products manufactured or supplied by KCG or Ruco.  Ryan responded, pointing to Mr. Ryan's October 2000 deposition, in which he stated that he had used or worked in the vicinity of numerous asbestos-containing products throughout his career.  KCG objected to the use of Mr. Ryan's deposition because Ryan had not timely listed Mr. Ryan as a "product identification witness." The trial court agreed and struck the deposition as summary judgment evidence.  The trial court then

---

[1] The plaintiffs asserted other causes of action specific to defendants other than KCG, but those claims are not relevant to the cause at hand.

2

granted KCG's motion for summary judgment and severed Ryan's claims against KCG from the other claims, rendering the summary judgment order final and appealable. Ryan appeals, complaining of the trial court's decision to strike Mr. Ryan's deposition as summary judgment evidence and arguing that if the deposition is considered, the record shows that she raised a question of fact as to whether Mr. Ryan was exposed to asbestos through a Ruco product.

**Discussion**

We have carefully reviewed Ryan's summary judgment evidence, including Mr. Ryan's deposition testimony, and we hold that, assuming that the deposition should not have been struck by the trial court, Ryan still did not produce evidence that Mr. Ryan worked with a Ruco product that contained asbestos.

A party seeking a no-evidence summary judgment asserts that there is no evidence of one or more essential elements of the claim on which the opposing party will have the burden of proof at trial. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.); *see* Tex. R. Civ. P. 166a(i). A trial court should grant a no-evidence summary judgment if the non-movant does not produce more than a scintilla of probative evidence raising a genuine issue of material fact as to the elements attacked by the movant. *Holmstrom*, 26 S.W.3d at 530. In reviewing a summary judgment, we view the evidence in the light most favorable to the non-movant and make every reasonable inference and resolve all doubts in favor of the non-movant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Holmstrom*, 26 S.W.3d at 530.

In his deposition, Mr. Ryan was asked "what brand of product [he] used on the job." Mr. Ryan answered, "USG, Gold Bond, Wellkote, Triko, Durabond, Ruco, Freemans, and that about

sums it all up." Asked, "Can you think of any other joint compounds that you may have used," Mr. Ryan answered, "No; that about covers them all as far as I'm concerned." He then was asked whether he had used "other asbestos containing products or materials," and he said he had, mentioning a certain kind of plaster. He also testified that he had worked near pipe wrappers using asbestos-containing insulation products. Mr. Ryan was next asked to talk in more depth about "the products . . . [he] mainly used as a drywall insulator." The attorney asked Mr. Ryan about the "specific brand names" he had provided, asking, "And the names that you had listed were—you had listed Gold Bond and you had listed Triko and you had listed USG joint compound and you had listed Durabond. Were there any other asbestos containing joint compounds that you worked with over the course of your career as a drywaller?" Mr. Ryan answered in the affirmative and named two other products. In other words, Mr. Ryan referred to Ruco as a product he had used as a drywaller but never identified Ruco as one of the asbestos-containing products he had used. Nor did Mr. Ryan testify about when he used Ruco products during his thirty-year career.

As further evidence, Ryan produced evidence showing that KCG was a successor-in-interest to Ruco, which "sold products which were generally known as drywall joint compound." Ruco produced joint compounds containing asbestos and sold those products in Illinois, where Mr. Ryan worked as a drywall finisher. Ryan also produced a 1977 letter from Ruco to its customers stating that it was discontinuing the sale of asbestos-containing joint compound as of October 1977. In that letter, Ruco stated that it had sold significant quantities of non-asbestos products as well. Finally, Ryan pointed to an affidavit by Dr. Mark Colella, in which Dr. Colella stated that he had reviewed Mr. Ryan's medical records, work history, and deposition testimony. Dr. Colella opined,

4

based upon that review, that Mr. Ryan's lung cancer was caused in part by inhalation of asbestos dust throughout his career as a drywaller. Colella stated, "Mr. Ryan testified that he was exposed to asbestos dust created by the sanding of Ruco joint compound and that he breathed this dust during his work as a drywall finisher. The dust from the sanding of Ruco joint compound played a substantial contributing factor in causing Mr. Ryan's lung cancer and death." Mr. Ryan's work history sheets reviewed by Dr. Colella did not list Ruco as an asbestos-containing product with which he worked.[2]

Dr. Colella's statement implicating Ruco in Mr. Ryan's injuries results from a misreading of Mr. Ryan's testimony. The one answer in which Mr. Ryan referred to a Ruco product was in response to a question asking not what *asbestos-containing* products he had used, but what products he had used in his career. The evidence shows that Ruco made products both that contained asbestos and without asbestos, and Mr. Ryan never testified that he worked with or was exposed to an asbestos-containing Ruco product, only that he worked with a Ruco product, and he never stated when he used Ruco products.

Dr. Colella came to his conclusions based on Mr. Ryan's deposition testimony, medical records, and work history sheets. Dr. Colella's affidavit does not demonstrate that he reviewed any other testimony or statements by Mr. Ryan, and Mr. Ryan's deposition testimony does not say what Dr. Colella says it does. Dr. Colella's misstatement of Mr. Ryan's testimony, even

---

[2] We further note that in her discovery response setting out asbestos-containing products to which Mr. Ryan was exposed, Ryan did not list any Ruco products among the list of asbestos-containing products testified to by Mr. Ryan's deposition. She does state that two of Mr. Ryan's former co-workers "may testify" about Mr. Ryan's exposure to other asbestos-containing products, including those manufactured by Ruco.

when read in conjunction with Mr. Ryan's actual deposition testimony and work history, does not create a fact issue as to whether Mr. Ryan was exposed to asbestos through a Ruco product. Mr. Ryan worked with numerous asbestos-containing products throughout his thirty-year career as a drywall finisher and in his deposition and work history, he mentioned several of those products by name. Ruco, however, was not one of those products named by Mr. Ryan as containing asbestos. Therefore, assuming without deciding that Mr. Ryan's deposition should not have been struck, Ryan's evidence produced in response to KCG's no-evidence motion for summary judgment still does not amount to even a scintilla of evidence as to whether Mr. Ryan's lung cancer was caused in part by an asbestos-containing product manufactured by Ruco.

### Conclusion

Because Ryan failed to raise a question of fact as to whether Ruco, and therefore, KCG, might be partially responsible for Mr. Ryan's injuries and death, the trial court did not err in dismissing Ryan's claims against KCG and in severing those claims from the rest of the lawsuit. We affirm the trial court's order of dismissal.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: August 31, 2005

6